# IN THE UNITED STATES COURT OF APPEALS
# FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

November 6, 2013

Lyle W. Cayce
Clerk

No. 12-60834
Summary Calendar

SHAW GLOBAL ENERGY SERVICES, INCORPORATED,

Petitioner

v.

THOMAS E. PEREZ, SECRETARY, DEPARTMENT OF LABOR,

Respondent

Petition for Review of an Order of the Occupational
Safety and Health Review Commission
No. 09-0555

Before WIENER, OWEN, and HAYNES, Circuit Judges.

PER CURIAM:*

Shaw Global Services, Inc. ("Shaw") appeals the Occupational Safety and Health Review Commission's (the "Commission") affirmance of an Occupational Safety and Health Administration ("OSHA") citation for failure to record an employee's work-related illness pursuant to 29 C.F.R. § 1904.29(b)(3). Shaw further appeals an OSHA Administrative Law Judge's ("ALJ") affirmance of an OSHA citation for failing to abide by the annual

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 12-60834

respirator fit-testing requirement pursuant to 29 C.F.R. § 1910.134(f)(2). We DENY Shaw's petition and AFFIRM the decisions of the Commission and the ALJ.

## I. Factual and Procedural History

Shaw contracted to demolish the cell room of a chemical plant, which involved removing pipes, tanks, and equipment that contained residual amounts of mercury. The demolition workers wore respirators and submitted to urinalysis tests to monitor mercury levels in their bodies. Five weeks after Channing Stanfield began performing demolition work on the cell room, his urinalysis measurement for mercury exceeded 75 µg/g—the level at which Shaw removed its employees from demolition work in the cell room.[1] Shortly after his reassignment from demolition work in early September, Stanfield experienced a non-work-related back injury, and a doctor recommended two weeks of light duty. Rather than assign him to light duty work, Shaw sent Stanfield home to recover.

Over the next few weeks, Stanfield visited the emergency room several times complaining of symptoms consistent with mercury toxicity. According to Stanfield, a toxicologist diagnosed him with mercury toxicity, and he was admitted to the hospital for several days to receive treatment. Stanfield informed Shaw's safety manager of his diagnosis and symptoms, which had started in early September. Shaw's safety manager visited Stanfield in the hospital where he was again informed, this time by Stanfield's parents, that

---

[1] Shaw explains that its practice of removing employees whose mercury levels reach 75 µg/g falls within the Chlorine Institute's ("CI") guidelines, which suggest that temporary removal of employees may be appropriate at a mercury level of 100 µg/g or above.

No. 12-60834

Stanfield was being treated for mercury toxicity. Stanfield did not provide his medical records to Shaw, and Shaw questioned Stanfield's diagnosis. After an investigation, Shaw concluded that Stanfield's symptoms were not a result of mercury exposure and, therefore, decided not to record his alleged illness.

After inspecting the chemical plant, OSHA issued Shaw the two citations at issue. The first citation, classified as an other-than-serious violation, was based on Shaw's failure to record Stanfield's work-related illness as required by § 1904.29(b)(3). The second citation, classified as a serious violation, was based on Shaw's failure to abide by the annual respirator fit-testing requirement under § 1910.134(f)(2). Although Shaw had its employees fit-tested for respirators prior to their use, four Shaw employees who were fit-tested in June 2007 were not again re-tested until sixteen months later in October 2008.

Following a hearing, the ALJ affirmed the two citations. Shaw sought review by the Commission, which declined to review the respirator fit-testing citation, but accepted the record-keeping citation for review and affirmed the decision of the ALJ. Shaw petitioned this court pursuant to 29 U.S.C. § 660(a) for review of the Commission's decision concerning the record-keeping citation and the ALJ's decision concerning the respirator fit-testing citation.

## II. Record-Keeping Citation

Section 1904.29(b)(3) requires employers to record an employee's "injury or illness on the OSHA 300 Log and 301 Incident Report within seven (7) calendar days of receiving information that a recordable injury or illness has occurred." The parties do not contest that mercury toxicity is a recordable illness and that Shaw did not record any alleged mercury-related illness reported by Stanfield in its record-keeping logs. Therefore, the only issue is whether Shaw "receiv[ed] information that a recordable injury or illness ha[d]

3

occurred" that would require Shaw to record Stanfield's alleged injury in its logs. *See* § 1904.29(b)(3).

Shaw argues that the Commission applied an incorrect legal standard in interpreting § 1904.29(b)(3) because the regulation requires recording only when the employer "make[s] a reasonable judgment based on the information and expertise available to it" that the employee experienced a recordable injury or illness. *See Amoco Chems. Corp.*, 12 BNA OSHC 1849, at \*7 (No. 78-0250, 1986). Conversely, according to the Secretary of Labor (the "Secretary"), the recording requirement is triggered whenever an employer receives information sufficient to put it on notice that a recordable injury or illness has occurred, irrespective of the employer's judgment of whether recording is necessary. We normally defer to the Secretary's interpretation of an OSHA regulation when it "is consistent with the regulatory language and is otherwise reasonable." *Trinity Marine Nashville, Inc. v. Occupational Safety & Health Review Comm'n*, 275 F.3d 423, 427 (5th Cir. 2001) (emphasis omitted) (citation and quotation marks omitted). However, we need not decide if a recording obligation is triggered only when the employer makes a reasonable judgment that recording is necessary because the Commission concluded that Shaw's decision not to record Stanfield's alleged illness was "plainly unreasonable" under *Amoco Chemicals* in light of the information available to it. As a result, even employing Shaw's interpretation of § 1904.29(b)(3), we must affirm the Commission's decision.

"We are bound by the [Commission's] findings on questions of fact and reasonable inferences drawn from them if they are supported by substantial evidence on the record considered as a whole even if this court could justifiably reach a different result *de novo*." *Trinity Marine*, 275 F.3d at 426-27. Moreover, we will not disturb the Commission's legal conclusions unless "they

are arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with [the] law." *Id.* at 427 (citation and internal quotation marks omitted).

Based on the testimony and exhibits presented during a three-day hearing before the ALJ, the Commission found that Shaw was aware that Stanfield worked in an environment that could have exposed him to mercury and that his urinalysis result suggested he had been exposed to mercury. Further, the Commission found that both Stanfield and his parents informed Shaw that he was undergoing treatment for mercury toxicity and that Shaw's safety manager admitted visiting Stanfield because he was being treated for mercury toxicity. Based on these findings, the Commission concluded "that Shaw had sufficient information to determine that a recordable illness had occurred."

The Commission also concluded based on its findings that "Shaw's decision not to record was plainly unreasonable," especially in light of the fact that Shaw's safety manager admitted to visiting Stanfield in the hospital because he was being treated for mercury toxicity. Shaw argues that its decision not to record was reasonable because it did not have an opportunity to review Stanfield's medical records. Although Shaw understandably desired to review Stanfield's medical records, we cannot conclude that the absence of medical records rendered the Commission's conclusion arbitrary or capricious in light of its findings concerning the information in Shaw's possession suggesting Stanfield had experienced a recordable illness.[2]　Therefore,

---

[2] Shaw further asserts that it made a reasonable judgment that recording of Stanfield's alleged illness was unnecessary because: (1) Stanfield's mercury levels were below the level the CI considers dangerous; (2) Stanfield was allegedly diagnosed over a month after working in the cell room; and (3) no other employees who worked in the cell room presented with mercury toxicity symptoms. Although these facts may suggest that Stanfield did not experience a recordable illness, they do not establish that the Commission arbitrarily or capriciously concluded that Shaw's decision not to record was "plainly unreasonable" in light of the significant amount of evidence suggesting that Stanfield experienced mercury toxicity.

No. 12-60834

applying the reasonable judgment standard of *Amoco Chemicals*—the standard that Shaw advocates on appeal should be applied—the Commission concluded that the citation for Shaw's failure to record pursuant to § 1904.29(b)(3) was proper. *See Amoco Chems.*, 12 BNA OSHC 1849, at *7. Therefore, even under Shaw's interpretation of the record-keeping requirement, the Commission's decision that Shaw's failure to record was "plainly unreasonable" was not arbitrary or capricious, and its order must be affirmed.

### III. Respirator Fit-Testing Citation

OSHA also cited Shaw for failing to perform annual respirator fit-testing. The respirator fit-testing regulation requires employers to "ensure that an employee using a tight-fitting facepiece respirator is fit-tested prior to initial use of the respirator, whenever a different respirator facepiece . . . is used, and at least *annually* thereafter." § 1910.134(f)(2) (emphasis added). The annual fit-testing requirement is based on "the recognition that standardized fit-testing protocols greatly increase the effectiveness of respirators." Respiratory Protection, 63 Fed. Reg. 1152, 1157 (Jan. 8, 1998) (codified at 29 C.F.R. § 1910.134). The parties do not contest that there was a sixteen-month gap between the initial fit-testing and the subsequent test for four of Shaw's employees. Therefore, the only issue on appeal is whether § 1910.134(f)(2)'s requirement that testing be performed "at least annually" allows for this gap between testing.

Shaw argues that "at least annually" requires that testing must occur at least once per calendar year. Therefore, under Shaw's approach, because the initial fit-testing was performed in June 2007, its subsequent fit-testing in October 2008 was timely. Notably, under this interpretation an employer who performs testing in January would not be required to perform additional testing until December of the following year, thereby creating a twenty-three

6

month gap between fit-testing.  Such an approach is unreasonable in light of the regulation's plain language requiring testing "at least annually."  It would also subvert the regulation's purpose of creating standardized testing protocols because it would allow for gaps ranging from twelve to twenty-three months between fit-testing.

Conversely, the Secretary interprets this phrase as requiring fit-testing "no later than 365 days after the previous testing."  We defer to the Secretary's interpretation of OSHA regulations when it "is consistent with the regulatory language and is otherwise reasonable."  *Trinity Marine*, 275 F.3d at 427 (emphasis omitted) (citation and quotation marks omitted).  Interpreting "annually" to refer to a 365-day period, as advocated by the Secretary, is consistent with the regulation's plain language and achieves the purpose of standardizing the fit-testing protocols by ensuring that there are not significant fluctuations in the amount of time between tests.[3]  *See* 63 Fed. Reg. 1152, 1157.  Therefore, because Shaw's sixteen-month gap between fit-testing violated § 1910.134(f)(2)'s requirement that testing be performed "at least annually," we affirm the ALJ's order with respect to the fit-testing citation.

Accordingly, Shaw's petition for review is DENIED and the orders of the ALJ and the Commission are AFFIRMED.

---

[3] While the regulation's reference to "at least annually" cannot reasonably be interpreted to allow for a sixteen-month gap in testing, we leave for another day the question of whether a gap between testing of a year and a few days would violate § 1910.134(f)(2).